UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICENTE GARCIA,<br><br>        Plaintiff,<br><br>    v.<br><br>A. JOAQUIN, et al.,<br><br>        Defendants.<br>                             / | CASE NO.   1:10-cv-730-AWI-MJS (PC)<br><br>FINDINGS AND RECOMMENDATION THAT ALL CLAIMS EXCEPT PLAINTIFF'S INADEQUATE MEDICAL CARE CLAIM BE DISMISSED WITH PREJUDICE<br><br>(ECF No. 13)<br><br>OBJECTIONS DUE IN THIRTY DAYS |

      Plaintiff Vicente Garcia ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

      Plaintiff initiated this action on April 27, 2010.  (ECF No. 1.)  Plaintiff filed an Amended Complaint on August 2, 2010.  (ECF No. 13.)  Plaintiff's Amended Complaint is now before the Court for screening.

**I.      SCREENING REQUIREMENT**

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court

determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

## II.    PLAINTIFF'S AMENDED COMPLAINT

Plaintiff is a prisoner currently housed at California Correctional Institution at Tehachapi, California ("CCI"). Plaintiff seeks relief for alleged violation of his rights under the First, Eighth, and Fourteenth Amendments and the California Government Code by the following Defendants: 1) A. Joaquin, 2) K.A. Lee, 3) B. Grimm, and 4) Nelson Madrilejo.

Plaintiff alleges as follows:

Plaintiff is being provided inadequate medical care for his diabetes and will suffer irreparable harm if he does not receive the proper treatment. Defendant Joaquin is the Chief Medical Officer at CCI. Defendant Lee is a doctor at CCI and had been the 4B-Facility Yard doctor at CCI for a period of time. At some point, Defendant Grimm, who is also a doctor at CCI, took over as the 4B-Facility Yard doctor at CCI. Defendant Madrilejo is an endocrinologist, and was CCI's endocrinologist during the time of the events alleged in Plaintiff's Amended Complaint.

On October 26, 2008, Plaintiff filed an administrative 602 for inadequate medical treatment. Plaintiff has diabetes and had concerns about the treatment he was receiving. Defendant Grimm handled Plaintiff's appeal. In his appeal, Plaintiff requested a diabetic

insulin pump, diabetic meals with snacks in between each meal, and proper shoes. In his appeal, Plaintiff said he was also urinating protein from his kidneys and experiencing painful neuropathy in his hands and feet, dizziness while standing and sitting, and low blood sugar. Dr. Grimm denied Plaintiff's appeal.

On November 18, 2008, Plaintiff's medical records show that he was awaiting a consultation with an endocrinologist. On December 11, 2008, Defendant Madrilejo recommended that Plaintiff receive an insulin pump. CCI refused to provide it.

Plaintiff sent a letter to Defendant Grimm regarding his situation on October 25, 2009. Plaintiff informed Defendant Grimm that diabetes can be manageable if four steps are met. He asked Defendant Grimm to help him meet these requirements.

October 30, 2009, Plaintiff met Defendant Joaquin, the new Chief Medical Officer. Defendant Joaquin said that he had received a letter Plaintiff sent on September 30, 2009 to Warden Gonzales explaining Plaintiff's symptoms and what he was going through as a result of his diabetes. Plaintiff informed him that his treatment was inadequate and causing serious complications. Defendant Joaquin said Plaintiff's requests for an insulin pump and diabetic meals were unnecessary since Plaintiff ate his meals at the same time every day and Plaintiff was given injections at the same time every day. Still, Defendant Joaquin said he would talk to Defendant Madrilejo about the insulin pump. Defendant Madrilejo ceased recommending the insulin pump after speaking with Defendant Joaquin.

On November 3, 2009, Plaintiff saw Defendant Lee, who informed Plaintiff that Defendant Lee and Defendant Joaquin would simply continue with the treatment Plaintiff was already receiving. Plaintiff said that he disagreed with the treatment and that it was causing serious complications. Plaintiff asked for an insulin pump and for a diabetic diet; both requests were denied. Defendant Lee was also aware that Plaintiff's blood sugars were running high and low and that Plaintiff's treatment was inadequate.

Plaintiff received a letter from Defendant Joaquin on December 11, 2009, iInforming Plaintiff that he received Plaintiff's September 30, 2009 letter addressed to Warden Gonzalez. Defendant Joaquin also said he met with Plaintiff on October 30, 2009 to

discuss his health issues. He said he would meet with Plaintiff in three weeks after Plaintiff completed certain lab tests and the results had been received. On December 13, 2009, Plaintiff sent a letter to Defendant Joaquin, informing him that the treatment "they" wanted to give him was the same inadequate treatment he was currently receiving. Plaintiff sent another letter to Defendant Joaquin on January 6, 2010. Plaintiff pointed out the facts to Defendant Joaquin and informed him of his symptoms.

On September 28, 2009, Plaintiff had low blood sugar because Nurse Baker forgot his medication. Plaintiff also had low blood sugar on January 10, 2010.

A March 2, 2010 letter from Defendant Joaquin maintained that Plaintiff was receiving the proper care and medication. Plaintiff responded that he had been diabetic for number of years and warned that hypoglycemia could cause brain damage and other injuries.

On June 29, 2009, Plaintiff asked Doctor Grimm to switch him from Lantus to NPH insulin. Plaintiff informed Defendant Grimm about studies which showed that Lantus caused cancer. On June 19, 2009, Defendant Madrilejo recommended that Plaintiff receive Lantus at bedtime. CCI refused. On August 25, 2009, Defendant Madrilejo again recommended giving Plaintiff Lantus at bedtime, and again CCI refused. On September 22, 2009, Defendant Grimm said that Plaintiff refused Defendant Madrilejo's recommendation that Plaintiff take Lantus. Defendant Grimm recommended a medication adjustment; his recommendation was denied. On November 3, 2009, Defendant Lee stated that Plaintiff had refused to take Lantus. CCI now says that Plaintiff is refusing to following Defendant Madrilejo's recommendation that Plaintiff take Lantus.

"It"[1] on December 23, 2009, states that Plaintiff's hypoglycemia occurs at noon after working out. "They"[2] also denied Plaintiff an insulin pump and said medication could only do so much. CCI refused to follow Defendant Madrilejo's recommendations.

---

[1] Plaintiff refers to an "it" in his Complaint but does not identify that to which he refers. (Am. Compl. at 23 ¶ 73.)

[2] Plaintiff's "they" is not identified. (Am. Compl. at 23 ¶ 73.)

On January 13, 2010, Defendant Madrilejo noted that Plaintiff had hypoglycemia at night and recommended moving the evening NPH insulin treatment to bedtime. The CCI refused to follow his instructions. Defendant Madrilejo said he could not recommend an insulin pump because he would have to show Plaintiff how it worked. On January 11, 2010, Nurse Wooliver told Plaintiff that she was going to put in a recommendation for Plaintiff to receive the treatment that he wanted.

Plaintiff asks for a preliminary and permanent injunction, ordering Defendants to provide Plaintiff with an insulin pump, a diabetic special diet, and proper tennis shoes. If the treatment is not possible at CCI, Plaintiff asks for a transfer to a different facility. Plaintiff also seeks $300,000 in compensatory damages against each Defendant, jointly and severally. Plaintiff asks for $250,000 in punitive damages against each Defendant. Plaintiff also asks for a jury trial and for costs.

### III. ANALYSIS

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

### A. First Amendment

Plaintiff asserts, without explanation, that his First Amendment rights have been violated by the above-described acts and inactions.

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom

of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. The First Amendment protects the freedom of religion, free speech, the press, the right to assemble, and to petition the Government for redress of grievances. Id. Plaintiff has not alleged he was denied any such right or freedoms. Nothing in the facts alleged suggests a basis for a first Amendment claim.

### B. Eighth Amendment

The Eighth Amendment protects prisoners from "cruel and unusual punishment." U.S. CONST. amend. VIII. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain ...." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Plaintiff alleges that his Eighth Amendment rights were violated when Defendants refused to provide him with the medical care Plaintiff requested for his diabetes.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the

indifference." Id. (citing McGuckin, 974 F.2d at 1060). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff has sufficiently pled a serious medical condition, namely diabetes which if not properly treated could lead to significant injury. Plaintiff has also alleged that Defendant medical personnel were aware that depriving Plaintiff of an insulin pump, diabetic meals, and proper shoes would pose a risk of serious injury to Plaintiff. Further according to the pleadings which at this point must be taken as true, Defendants are aware that the limited treatment provided has caused Plaintiff proteinuria and neuropathic pain in his hands and feet, dizziness, and low blood sugar. Plaintiff alleges Defendants were deliberately indifferent to these facts and Plaintiff's suffering. Such allegations are sufficient to sate a cognizable claim for inadequate medical care against Defendants Joaquin, Grimm, Lee, and Madrilejo.

### C. Fourteenth Amendment

Plaintiff claims that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484

(1995). In determining whether a hardship is sufficiently significant enough to warrant due process protection, the Court looks to: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody and is thus within the prison's discretionary authority to impose, (2) the duration of the condition and the degree of restraint imposed, and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).

The nature of Plaintiff's due process claim is unclear. Plaintiff does not identify any liberty interest at stake. While Plaintiff's right to be free from the unnecessary and wanton infliction of bodily harm is certainly protected under the Constitution, that right is more explicitly protected under the Eighth Amendment. Plaintiff does not have a duplicative claim under the Fourteenth Amendment. See Whitley v. Albers, 475 U.S. 312, 327 (1986) ("the Eighth Amendment ... serves as the primary source of substantive protection to convicted prisoners in cases ... where the deliberate use of force is challenged as excessive and unjustified" and "in these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause.") Plaintiff's claims will therefore be construed under the Eighth Amendment, and not under the Fourteenth Amendment.

## IV.   CONCLUSION

For the reasons stated above, the Court RECOMMENDS the following:

1. Plaintiff be allowed to proceed on his inadequate medical care claim against Defendants Joaquin, Lee, Grimm, and Madrilejo; and

2. All remaining claims be dismissed with prejudice;

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   September 27, 2011         /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE